Burdick v Tonoga, Inc. (2019 NY Slip Op 08461)





Burdick v Tonoga, Inc.


2019 NY Slip Op 08461


Decided on November 21, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 21, 2019

527117

[*1]Jay Burdick et al., on Behalf of Themselves and All Others Similarly Situated, Respondents,
v
Tonoga, Inc., Doing Business as Taconic, Appellant.

Calendar Date: September 11, 2019

Before: Egan Jr., J.P., Lynch, Mulvey and Devine, JJ.


Greenberg Traurig, LLP, Albany (Henry M. Greenberg of counsel), for appellant.
Weitz & Luxenberg, PC, New York City (James J. Bilsborrow of counsel), for respondents.
Mayer Brown LLP, Washington, DC (Andrew J. Pincus of counsel), for Chamber of Commerce of the United States of American, amicus curiae.



Lynch, J.
Appeal from an order of the Supreme Court (McGrath, J.), entered July 6, 2018, which granted plaintiffs' motion for class action certification.
For more than 50 years, defendant has owned and operated a manufacturing facility located in the Town of Petersburgh, Rensselaer County. Defendant's manufacturing process involved the use of the chemical compounds perfluorooctanoic acid and its predecessor ammonium perfluorooctanoate (hereinafter jointly referred to as PFOA), as well as perfluorooctanesulfonic acid and its predecessor perflourooctane sulfonate (hereinafter jointly referred to as PFOS) to make water resistant materials. These chemicals are no longer used but, for many years, defendant's manufacturing process caused PFOA and PFOS to be converted to microparticles that were discharged into the surrounding soils and groundwater. Beginning in 2006, the Federal Environmental Protection Agency (hereinafter EPA) began studying the long and short-term effects of exposure to PFOA and PFOS and established guideline standards for allowable percentages of the chemicals in drinking water. Consequently, a provisional health advisory regarding the health effects of exposure to water contaminated by PFOA and PFOS was issued in 2009, then replaced in 2016, to require, among other things, remediation where the levels of the chemicals exceed 70 parts per trillion.
In 2004, defendant tested wells on its facility property and on adjacent private property and discovered the presence of high concentrations of PFOA in the water. It notified the State Department of Environmental Conservation (hereinafter DEC) and installed filtration systems in the wells located on its property, but not the nearby private wells. In January 2016, PFOA was added to the list of regulated hazardous substances (see 6 NYCRR 597.3). The Town began testing the municipal water supply to determine whether the chemical was present, and DEC recommended that households that had municipal water stop using tap water for drinking and cooking. Shortly thereafter, it was discovered that PFOA concentrations in the municipal water supply exceeded the EPA's recommended minimum concentration. In the following months, County officials also discovered excessive concentrations of PFOA and/or PFOS in well water in the area surrounding defendant's facility and in the leachates from the Town landfill. In May 2016, DEC declared defendant's facility to be a State Superfund site and designated it to be a significant threat to public health (see ECL 27-1313). Defendant and DEC entered into a consent agreement in November 2016 that, among other things, required defendant to take certain measures to ensure that affected Town residents had access to filtered water in their homes.
Plaintiffs, residents of the Town, commenced this action as a proposed class action, alleging that defendant's use and improper disposal of PFOA and PFOS caused personal injury and property damage. In their complaint, plaintiffs proposed four classes: (1) a public water property damage class; (2) a private well water property damage class; (3) a private well nuisance class; and (4) a PFOA invasion injury class. Generally, the putative class members were individuals who owned or leased property in the Town or who ingested contaminated municipal or well water or inhaled PFOA or PFOS particulates in the Town and had demonstrable evidence of elevated levels of the chemical in their blood system. Following joinder of issue, plaintiffs moved for class action certification pursuant to CPLR article 9. Supreme Court granted plaintiffs' motion, certifying all four classes and appointing class representatives. Defendant appeals.
As proponents of the class action, plaintiffs bore the burden of demonstrating that five prerequisites can be met (see CPLR 901; Weinstein v Jenny Craig Operations, Inc., 138 AD3d 546, 547 [2016]; Osarczuk v Associated Univs., Inc., 82 AD3d 853, 855 [2011], lv dismissed 17 NY3d 893 [2011]). The issues in this case stem from Supreme Court's determination with regard to three of these prerequisites — namely, "[whether] there are questions of law or fact common to the class which predominate over any questions affecting only individual members; [whether] the claims or defenses of the representative parties are typical of the claims or defenses of the class; . . . and [whether] a class action is superior to other available methods for the fair and efficient adjudication of the controversy" (CPLR 901 [a] [2], [3], [5]; see Borden v 400 E. 55th St. Assoc., L.P., 24 NY3d 382, 398-399 [2014]).
The commonality prerequisite "requires predominance of common questions over individual questions, not identity or unanimity of common questions, among class members" (Ferrari v Natl. Football League, 153 AD3d 1589, 1591 [2017]). "[C]ommonality cannot be determined by any mechanical test and
. . . the fact that questions peculiar to each individual may remain after resolution of the common questions is not fatal to the class action" (City of New York v Maul, 14 NY3d 499, 514 [2010] [internal quotation marks and citation omitted]). "[C]ommonality is not merely an inquiry into whether common issues outnumber individual issues but rather whether the use of a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated" (Pludeman v Northern Leasing Sys., Inc., 74 AD3d 420, 423 [2010] [internal quotation marks and citation omitted]). The common issues must be "capable of class wide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke" (Wal-Mart Stores, Inc. v Dukes, 564 US 338, 350 [2011]). As such, the focus is whether the proposed class action will "generate common answers apt to drive the resolution of the litigation" (id. [internal quotation marks, emphasis and citation omitted]).
In support of their claim that there were common questions of law or fact supporting the motion for class certification, plaintiffs relied on the opinions offered by an environmental engineer, a physician, an epidemiologist and an economist. According to plaintiffs' experts, the "overwhelming source of PFOA contamination" in the Town's drinking water was defendant's facility and that it was "highly likely" that properties within a seven-mile radius of defendant's facility were contaminated by particulates that had been released from defendant's facility. Expert proof further demonstrated that it was "more probable than not" that there is an association between exposure to PFOA and kidney cancer, testicular cancer, ulcerative colitis, thyroid disease, hypercholestemia and preeclampsia. According to plaintiffs' economist, whether the contamination had an adverse impact on the local housing market could be determined on a class-wide basis using established statistical methods.
In opposition to plaintiffs' motion, defendant submitted countering opinions by an economist, toxicologist, a geologist and a physician. According to defendant's economist, there was no evidence that the housing market has been negatively affected by the contamination, the existence of PFOA had not diminished the use or enjoyment of the properties and certain unique characteristics and uses of contaminated properties militated against determining damages on a class wide basis. Further, defendant's geologist explained that the seven-mile radius zone identified by plaintiffs' environmental engineer included towns in Vermont and Massachusetts, that both the Little Hoosic River and Hoosic River flow through the area and that there were two other manufacturing facilities in the region that once produced PFOA and PFOS. Defendant's toxicologist explained that PFOA is found at low levels in most people, that evidence suggesting that exposure to the chemical causes adverse health effects is "weak and inconsistent," and that differences in exposure and other risk factors weigh against class certification.
Mindful that CPLR article 9 was intended to be a liberal remedy and given broad construction (see City of New York v Maul, 14 NY3d at 509 [2010]), we agree with Supreme Court's determination to certify the three classes asserting property damage claims and the medical monitoring class. Primarily, defendant challenges the court's basic premise that defendant did not dispute that its facility was the source of the contamination. Plaintiffs' expert did opine, however, that whether defendant was the source of contamination could be determined through meteorological and topographic data, among other things, and that defendant was the likely source of contamination (compare Osarczuk v Associated Univs., Inc., 82 AD3d at 855-856 [2011] [where the plaintiffs were exposed to myriad toxic chemicals "over several decades, from various sources and in various ways"]). For his part, defendant's expert claims that there are other facilities in the region, but he does not directly rebut or even acknowledge the claim of plaintiffs' expert. In our view, plaintiffs' submissions establish that there are common questions of law or fact regarding whether defendant negligently discharged PFOA and PFOS and whether such negligent conduct caused property values to fall or the quality of life to suffer (see DeLuca v Tonawanda Coke Corp., 134 AD3d 1534, 1535-1536 [2015], lv denied 137 AD3d 1633 [2016]). Defendant's argument that individual class members will have different damages, though likely true, does not alter this conclusion. Even if, after determining the answers to these common questions, it becomes clear that "questions peculiar to each individual may remain" or that there are varied damages suffered among class members, class certification is still permissible (Friar v Vanguard Holding Corp., 78 AD2d 83, 98 [1980]; accord Maddicks v Big City Props., LLC., ___ NY3d ___, ___, 2019 NY Slip Op 07519, *2 [2019]; see Borden v 400 E. 55th St. Assoc., L.P., 24 NY3d at 399).
Plaintiffs also seek to certify an "invasion injury" class of plaintiffs who seek consequential damages and injunctive relief requiring defendant to fund a medical monitoring program.[FN1] The proposed class includes individuals who have ingested water contaminated with PFOA or PFOS sourced from either a well located within a seven-mile radius of defendant's facility and who have blood serum levels elevated above the recognized average background levels. In addition to the expert proof demonstrating an association between exposure to PFOA and/or PFOS and certain diseases, plaintiffs submitted an affidavit by a physician who opined that the proposed class met the federal standards for eligibility for medical monitoring (see e.g. 60 Fed Reg 38839 [May 28, 1995]). Further, plaintiffs' expert opines that a medical monitoring program is clinically necessary for the members of the proposed class to detect known health risks "as early as possible in order to minimize disease and improve health outcomes." Defendant's expert proof characterizes plaintiffs' evidence of an association between exposure and adverse health effects as "weak" and argues that class certification is inappropriate given the broad range of exposure levels and differing risk factors among putative class members. Further, defendant's expert opined that, from a scientific point of view, it is not valid to treat all persons within a seven-mile radius of the facility as having an equivalent health risk.
Generally, and recognizing that such a claim could deplete available resources for those suffering from illnesses or injuries related to toxic exposure, neither a direct claim for medical monitoring (see Caronia v Philip Morris USA, Inc., 22 NY3d 439, 451-452 [2013]) nor for a claim for damages for medical monitoring is cognizable absent a demonstrated physical injury or property damage claim (see id.; Ivory v International Bus. Machines Corp., 116 AD3d 121, 130 [2014], lv denied 23 NY3d 903 [2014]). Here, the common factors shared by the proposed class members are exposure to contaminated water from a well or municipal source within a seven-mile radius of defendant's facility and demonstrable evidence of PFOA blood levels far in excess of average levels, with no present PFOA-related illness or injury (see Sullivan v Saint-Gobain Performance Plastics Corp., US Dist Ct, D Vt, No. 5:16-cv-125 [Aug. 8, 2019]). Each of the class representatives either resided in the Town for several years or currently resides in the Town on property that they own or lease.
We agree with Supreme Court's determination that, in addition to those questions common to the property classes, the answers to certain additional common questions will be applicable to all members of the invasion injury class, for example: (1) whether medical monitoring is an available remedy; (2) the extent of the health hazard presented by exposure to PFOA; and (3) whether the members of the class are at significant increased risk for disease based on the excess accumulation of PFOA in their bodies. Although defendant contends that there are myriad factual questions that are not common to the class, we do not agree that those predominate. Importantly, this is not a case where there is an issue of fact regarding exposure — rather, each class member must establish exposure and accumulation through blood work (compare Westfall v Olean Gen. Hosp., 132 AD3d 1393, 1393-1394 [2015]). Under these circumstances, Supreme Court properly certified the invasion injury class to seek consequential damages in the form of medical monitoring. We note that, going forward, Supreme Court has "considerable flexibility" and may create subclasses to resolve certain issues or decertify a class at any time (see City of New York v Maul, 14 NY3d at 514).
We also agree with Supreme Court's determination that the proposed property classes and the medical monitoring class met the typicality and superiority class certification prerequisites. The typicality prerequisite is met where a "plaintiff's claim derives from the same practice or course of conduct that gave rise to the remaining claims of other class members and is based upon the same legal theory" (Friar v Vanguard Holding Corp., 78 AD2d at 99; accord Pludeman v Northern Leasing Sys., Inc., 74 AD3d at 423; see Hurrell-Harring v State of New York, 81 AD3d 69, 73 [2011]). The affidavits by the putative class members each demonstrate that the claims of those that owned property and resided on property in the affected area are based on the same alleged conduct, that is, defendant's discharge of PFOA and PFOS into the air and soil surrounding its facility. The affidavits further demonstrate that they were exposed to PFOA while residing in the Town on property that they leased or owned. Though the damages alleged by the representative plaintiffs are dissimilar, this is not relevant to determining typicality (see Borden v 400 E. 55th St. Assoc., L.P., 24 NY3d at 399; DeLuca v Tonawanda Coke Corp., 134 AD3d at 1536).
Finally, because certification will "allow one action to do a job, or a good part of it, that would otherwise have to be done by many" (Friar v Vanguard Holding Corp., 78 AD2d at 100), and avoid "multiple lawsuits involving claims duplicative of those asserted in this action and inconsistent rulings by various courts in this state" (Hurrell-Harring v State of New York, 81 AD3d at 75), and thus conserve judicial resources, we agree with Supreme Court's determination that class certification is superior to adjudicating claims individually (see Borden v 400 E. 55th St. Assoc., L.P., 24 NY3d at 400).
Egan Jr., J.P., Mulvey and Devine, JJ., concur.
ORDERED that the order is affirmed, with costs.



Footnotes

Footnote 1: Pursuant to criteria issued by the Federal Department of Health and Human Services, "[t]he primary purpose of a medical monitoring program is not considered to be a research activity that further investigates the cause-effect relationship between exposure and outcome. The purpose of a medical monitoring program is case-finding in order to refer individuals for further evaluation and, as appropriate, treatment. Within this framework, medical monitoring includes both testing for early biological effect and an assessment of exposure. . . . This is provided as a service to individuals in communities where there is believed to be an increased risk of disease from exposure to hazardous substances released into the environment" (60 Fed Reg 38839 [May 28, 1995]).