■ ANDREA WHITNEY et al., Appellants, v AGWAY, INC. et al., Respondents. [656 NYS2d 455] —Cardona, P. J. Appeal from that part of a judgment of the Supreme Court (Relihan, Jr., J.), entered November 2, 1995 in Tompkins County, which, *inter alia*, partially granted defendants' motions to dismiss the complaint as time barred.

In May or June 1988, plaintiff Andrea Whitney (hereinafter plaintiff), an owner of a small landscaping business, purchased a container of Diazinon pesticide from defendant Agway, Inc. The pesticide was bottled and labeled by Agway, but manufactured by defendant Ciba-Geigy Corporation. Plaintiff applied the pesticide to several seedlings on June 1, 1988 wearing

---

leather gloves, boots, a face mask and protective clothing according to the instructions. On June 13, 14, and 16, 1988, plaintiff transplanted the seedlings into her garden nursery using her bare hands. Within hours of this process on June 13, 1988, plaintiff began experiencing physical and psychological symptoms of organophosphate poisoning, including headaches, dizziness, nausea, blurred vision, memory loss, confusion, depression and anxiety. The symptoms recurred when she used the substance on the following days and caused her to seek medical attention on June 14, 1988, when she was taken to the hospital.

Concerned about her symptoms, plaintiff contacted Cornell University Extension Services as well as the National Pesticide Hotline in August 1988 for literature on the possible effects of exposure to Diazinon. Upon receipt of the materials, which appeared to confirm her suspicions and which she apparently gave to her doctors, plaintiff thereafter saw several medical practitioners and mental health specialists who began considering the possibility of Diazinon poisoning and toxin-induced psychosis. Plaintiff avers that she did not have an unqualified diagnosis that her symptoms were attributable to organophosphate poisoning until she received a January 3, 1992 letter from one of her physicians.[1]

This action seeking compensatory and punitive damages against Agway and Ciba-Geigy (hereinafter collectively referred to as defendants) and another defendant was commenced in March 1992. The complaint alleged 10 causes of action sounding in negligence, failure to warn, strict liability for a manufacturing defect, breach of implied warranty, derivative loss by plaintiff's husband and claims on behalf of plaintiffs' two daughters, Gabrielle and Erika. In December 1994, defendants moved for summary judgment requesting that the complaint be dismissed on the grounds of Statute of Limitations and, further, that the claims were preempted by Federal law. Supreme Court, *inter alia*, dismissed all claims by plaintiff and her husband as time barred, dismissed the claim on behalf of the after-born child, Erika, on the merits, and preserved the

---

1. Progress notes in plaintiff's medical chart dated August 12, 1988 from plaintiff's physician, David Newman, noted after a telephone conversation with plaintiff that her symptoms presented "a pretty convincing story for organophosphate insecticide poisoning". Newman further confirmed this probable diagnosis on October 10, 1988 in a referral letter to another physician. However, plaintiff maintains that she was not aware of these writings.

claims of Gabrielle for further discovery.[2] Plaintiffs now appeal from that part of the judgment that dismissed their claims on Statute of Limitations grounds.[3]

Initially, we note that plaintiffs' claims sounding in negligence, failure to warn and strict products liability are governed by the three-year limitations period provided for in CPLR 214, as modified by the toxic exposure extensions provided in CPLR 214-c. Pursuant to CPLR 214-c (2), the three-year Statute of Limitations "shall be computed from the date of discovery of the injury by the plaintiff or from the date when through the exercise of reasonable diligence such injury should have been discovered by plaintiff, whichever is earlier". This Court has previously noted that the date of discovery "will not be dependent upon the discovery of the cause of the injury" (*Hedlund v County of Tompkins*, 235 AD2d 980, 982). Furthermore, the term "injury" in CPLR 214-c is meant "to refer to an actual illness, physical condition or other similarly discoverable objective manifestation of the damage caused by previous exposure to an injurious substance" (*Sweeney v General Print.*, 210 AD2d 865, 865-866, *lv denied* 85 NY2d 808). "[T]he phrase 'discovery of the injury' necessarily contemplates something less than full awareness that one has been damaged as a result of exposure to a particular toxic substance" (*id.*, at 865; *see, Johnson v Ashland Oil*, 195 AD2d 980, 981).

We conclude based on this record that Supreme Court properly determined June 13, 1988, or in the alternative, no later than October 1988,[4] as the correct accrual date for those causes of action governed by the three-year limitations period under CPLR 214-c. Although plaintiff maintains that her earlier diagnoses of injury were preliminary, the record indicates that she was immediately aware of the existence of symptoms that were practically identical to those classically caused by pesticide poisoning and 57 out of the 67 symptoms

---

2. The causes of action favoring Gabrielle were preserved by Supreme Court under the infancy toll provided for in CPLR 208 but were subject to future dismissal in the event that they were determined to be preempted by the Federal Insecticide, Fungicide, and Rodenticide Act (7 USC § 136 *et seq.*).

3. Plaintiffs also sought to appeal the dismissal of the claims on behalf of Erika; however, their appellate briefs fail to raise any issue in this regard. Accordingly, we deem this portion of the appeal to be abandoned (*see, Gibeault v Home Ins. Co.*, 221 AD2d 826, 827, n 2).

4. The record indicates that, by this time, plaintiff and her husband had concluded that there was a likely connection between the pesticide and the symptoms she was experiencing. Further, plaintiff's physician was of the opinion that plaintiff's symptoms were probably at least partially attributable to a recent exposure to pesticides.

detailed in her bill of particulars were immediately present in mid-June 1988.[5] Additionally, plaintiff was aware that her physicians were, at the very least, exploring the poisoning theory as a probable source of her symptoms and plaintiff herself stated on an August 30, 1988 job application that she was being evaluated for organophosphate poisoning. Thus, plaintiff's claim should have been filed, at the latest, by October 1991— three years after she should have, through the exercise of reasonable diligence, discovered her injury.

Moreover, we do not find that plaintiffs' period to raise these claims was extended by CPLR 214-c (4), which requires that a plaintiff, *inter alia*, establish "that technical, scientific or medical knowledge and information sufficient to ascertain the cause of [the] injury had not been discovered, identified or determined prior to the expiration of the period within which the action or claim would have been authorized". We agree with Supreme Court that the record establishes that "competent toxicological and medical opinion was [on] hand to connect the toxic effects of the pesticide [purchased from Agway by plaintiff] with [plaintiff's] own palpable symptoms".

Finally, upon examination of Supreme Court's dismissal of plaintiffs' claims sounding in breach of an implied warranty of merchantability pursuant to the three-year Statute of Limitations in CPLR 214, we find that this portion of defendants' motion should have been denied. Breach of warranty claims are governed by the four-year limitations period contained in UCC 2-725 (*see, Shepard v Morning Pride Mfg.*, 138 AD2d 74, 75). Thus, since the pesticide was reportedly purchased in late May or early June 1988, and the subject action was commenced on March 23, 1992, the record is unclear as to whether Supreme Court erred in granting defendants' motion to the extent of dismissing this claim on Statute of Limitations grounds. We remit the matter to Supreme Court for a determination as to this issue with respect to the two defendants and, if necessary, a

5. Although plaintiff argues that certain conditions diagnosed in 1991 (which included diagnoses of acute enteritis and Thrombotic Thrombocytopenic Purpura Syndrome) were "latent" and "separate" from the conditions resulting from her original exposure to Diazinon, and thus, a mixed question of fact and law is presented (*see, e.g., Bimbo v Chromalloy Am. Corp.*, 226 AD2d 812), her bill of particulars lists 67 problems resulting from her symptoms, 63 of which had their onset within the first six weeks of her exposure to the pesticide. Even assuming that plaintiff's 1991 diagnoses may be connected to the original organophosphate poisoning, plaintiff nevertheless failed to produce nonspeculative proof that the later conditions did not result "directly from the progression of the [original organophosphate poisoning]" (*Sweeney v General Print., supra*, at 866).

determination concerning whether plaintiffs' warranty claims are preempted by Federal statute.

Mercure, Casey, Spain and Carpinello, JJ., concur. Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as granted defendants' motion to dismiss those causes in the complaint alleging breach of implied warranty on Statute of Limitations grounds; motion denied to that extent and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.