■ JACQUELYN A. OEFFLER, Respondent, v MILES, INC., et al., Appellants, et al., Defendants. [660 NYS2d 897] —Peters, J. Appeals (1) from an order of the Supreme Court (Ceresia, Jr., J.), entered March 14, 1996 in Rensselaer County, which, *inter alia*, partially denied certain defendants' motions for summary judgment dismissing the amended complaint based upon Federal preemption, and (2) from an order of said court, entered January 30, 1997 in Rensselaer County, which, *inter alia*, denied certain defendants' motion for summary judgment dismissing the amended complaint on Statute of Limitations grounds.

Plaintiff contends that between August 1988 and January 1990, while employed as an environmental specialist/janitor at Rensselaer Polytechnic Institute, she was continuously exposed to the fumes of pesticides which were stored in a windowless, unventilated room that she was assigned to share with an exterminator. Plaintiff contends that the pesticides to which she was exposed included products manufactured by each of the named defendants.[1] As a result of her exposure, she allegedly sustained serious personal injuries.

In October 1990, plaintiff filed a claim for workers' compensation benefits and was so compensated in February 1994. On January 15, 1993, plaintiff commenced this action against defendants. The complaint alleged, *inter alia*, that defendants were negligent in their manufacturing, testing, distribution, promotion and sale of the pesticides and in failing to adequately label them to warn potential users of the dangers associated with their use. The complaint further alleged causes of action premised upon breach of express and implied warranties of merchantability and fitness for use and strict products liability.

Defendants jointly moved for summary judgment based, primarily, upon the preemption provisions of the Federal Insecticide Fungicide and Rodenticide Act (7 USC § 136 *et seq.*) (hereinafter FIFRA) as well as the New York Environmental Conservation Law which governs the use of pesticides (*see*, ECL 33-0303). Plaintiff opposed the motion and cross-moved for, *inter alia*, leave to file an amended complaint which Supreme Court granted. The court held that any claims in plaintiff's amended complaint which raised failure to warn issues premised upon inadequate warnings or labels would be preempted to the extent that they would require additional or different information on the manufacturers' labels. Supreme Court, however, denied summary judgment on the claim alleging breach of the implied warranty of merchantability, the design defect claim and any remaining claims based upon State law preemption and/or lack of subject matter jurisdiction. Defendants appeal from such order.[2]

Following service of the amended complaint, the parties

---

1. Defendants BFC Chemicals, Inc., Rofan Services Inc., EPCO, Inc. and Sandoz Agro, Inc. are not involved in this appeal.

2. Defendants Miles, Inc., CIBA-GEIGY Corporation, Dow Chemical Company, DowElanco and Zoecon Corporation had previously moved to dismiss the complaint, as had defendants Positive Formulators Inc. by cross motion, on FIFRA grounds. Supreme Court denied the motion, holding that since at least one of the claims alleged in the complaint stated a valid cause of action which was not preempted, the complaint would not be dismissed.

engaged in limited discovery prompting defendants to, once again, move for summary judgment. This time defendants contended that plaintiff's claim was barred by the applicable Statute of Limitations. Supreme Court ultimately denied defendants' motion, without prejudice, holding, *inter alia*, that not only were defendants' submissions not in evidentiary form but also that this inadequacy was not cured by properly certified submissions in the reply papers. Defendants appeal from that order as well.

Since potentially dispositive of this proceeding, we address first the denial of defendants' motion for summary judgment on Statute of Limitations grounds. We find that Supreme Court erred in refusing to consider the certified records submitted by defendants in their reply to plaintiff's opposition to the motion. Initially, defendants submitted, through affidavit of counsel, unsworn medical records and reports provided to them by plaintiff during the course of discovery which showed plaintiff's awareness of her injury from as early as August 1988. Plaintiff contended, *inter alia*, that since defendants' submissions were not in admissible form, they should not be considered. Plaintiff then submitted, in opposition, the "Report of Occupational Injury or Illness" and the evaluation from the State University of New York Health Science Center which were previously submitted by defendants. In defendants' reply, counsel's affidavit explained the origin of these records and reports and provided certification of both the records and the hearing transcript of plaintiff's testimony before the Workers' Compensation Board (hereinafter WCB) (previously uncertified).

Acknowledging that a party seeking summary judgment must submit evidentiary proof in admissible form (*see, Friends of Animals v Associated Fur Mfrs.*, 46 NY2d 1065, 1067), " 'a moving defendant may rely upon the unsworn reports of the plaintiff's own physicians in support of a motion for summary judgment' " (*Tankersley v Szesnat*, 235 AD2d 1010, 1012, n 3, quoting *Torres v Micheletti*, 208 AD2d 519). Since the submission by defendants in their reply either consisted of records and reports of plaintiff's own doctors for which defendants received releases or, unlike *Ritt v Lenox Hill Hosp.* (182 AD2d 560), constituted certified copies of the same evidence originally submitted, we conclude, in the absence of any showing of prejudice (*see,* CPLR 2001), that it was error to summarily reject their submission.

With such determination, we review defendants' contention that plaintiff's claims are time barred. Although plaintiff counters that the submission of this motion was premature

due to the limited discovery which had occurred, we note plaintiffs' failure to proffer any viable evidence that there are facts currently unavailable but necessary to appropriately defend the motion (*see*, CPLR 3212 [f]).

Plaintiff's claims alleging negligence and strict products liability "are governed by the three-year limitations period provided for in CPLR 214, as modified by the toxic exposure extensions provided in CPLR 214-c (2)" (*Whitney v Agway, Inc.*, 238 AD2d 782, 784). The time of accrual thereunder has been recently clarified in *Matter of New York County DES Litig. (Wetherill v Eli Lilly & Co.)* (89 NY2d 506), wherein the Court of Appeals pronounced that "the time for bringing the action begins to run under the statute when the injured party discovers the primary condition on which the claim is based" (*id.*, at 509; *accord, Whitney v Quaker Chem. Corp.*, 90 NY2d 845). The Court of Appeals reasoned that "in enacting a new 'discovery' rule for the commencement of toxic torts, the Legislature had in mind only the discovery of the manifestations or symptoms of the latent disease that the harmful substance produced" (*id.*, at 514). "Discovery of the injury," the Court said, is the "discovery of the physical condition and not * * * the more complex concept of discovery of both the condition and the nonorganic etiology of that condition" (*id.*; *see, Whitney v Agway, Inc., supra*; *Perry v City of New York*, 238 AD2d 326; *Harley v 135 E. 83rd Owners Corp.*, 238 AD2d 136).

Here, the documentary evidence conclusively establishes that plaintiff discovered her alleged injury more than three years prior to the commencement of this action. In the transcript of plaintiff's testimony before the WCB, plaintiff stated that she began using the room during the second week of August 1988. She noticed an "awful" smell immediately and began having sinus problems and nausea toward the end of August 1988, with headaches and blurred vision within two to three months thereafter. She alleged that she informed her immediate supervisor about these complaints on several occasions and that the "fumes/smell of the room * * * was making her ill". She explained that the problems that she was experiencing had never before occurred and that she sought treatment with a physician. Plaintiff's claim for compensation filed with the WCB, dated October 19, 1990, again alleged that the injury occurred from August 1, 1988 until February 1990. This document confirms that plaintiff gave notice to her employer of these injuries in 1988. Additional documents submitted by defendants reiterate plaintiff's contention that the incident occurred "8-88 to 2-90" as a consequence of "work-

ing in a closed room with the attached chemicals". Based upon these and numerous other documents, we find it clear that plaintiff discovered her injury within the meaning of CPLR 214-c (2) as early as August 1988 (*see, Matter of New York County DES Litig. [Wetherill v Eli Lilly & Co.], supra*, at 514).

While plaintiff asserts that the exposure to each of these chemicals produced a different injury which may well fall within the statutory period, we note that it was "incumbent upon plaintiff[ ] to come forth with factual substantiation of [her] assertions of 'new injury' within the limitations period * * * sufficient to demonstrate not only when such injury occurred, but also that it is, in fact, qualitatively different from that sustained earlier" (*Coughlin v International Bus. Machs. Corp.*, 225 AD2d 256, 260 [citation omitted]). In the absence thereof, we find that the commencement of this action on January 15, 1993, more than four years after the manifestations and symptoms of plaintiff's injury were evident, warrants the dismissal of these claims, as well as that claim sounding in fraud as a derivative thereof (*see, New York Seven-Up Bottling Co. v Dow Chem. Co.*, 96 AD2d 1051, 1052-1053, *affd* 61 NY2d 828).

The remaining claims alleging breach of warranty are similarly time barred (*see*, UCC 2-725; *cf., Whitney v Agway, Inc.*, 238 AD2d 782, *supra*). Notably, in support of her cross motion for summary judgment, plaintiff submitted the WCB testimony of Wayne Plourde, the exterminator with whom she shared the room. In opposition thereto, defendants submitted an affidavit of Plourde explaining that it was his responsibility to order the pesticides for interior use at Rensselaer Polytechnic Institute and that by August 1988, several pesticides, including defendants' products, were already located in the subject area. Since this action was commenced in January 1993, these claims were untimely (*see*, UCC 2-725).

Accordingly, the order entered January 30, 1997 is reversed, defendants' motion for summary judgment dismissing the complaint against them is granted and the appeal from the order entered March 14, 1996 is dismissed.

Mikoll, J. P., Crew III, White and Yesawich Jr., JJ., concur. Ordered that the order entered January 30, 1997 is reversed, on the law, without costs, motion granted, summary judgment awarded to defendants Miles Inc., CIBA-GEIGY Corporation, Dow Chemical Company, DowElanco, Positive Formulators Inc., Zoecon Corporation and Sandoz Pharmaceutical Corporation, and complaint dismissed against them. Ordered that the appeal from the order entered March 14, 1996 is dismissed, as academic, without costs.