*12-3403-cv (L)*
*In Re: World Trade Ctr. Lower Manhattan Disaster Site Litig.*

# In the
# United States Court of Appeals
## For the Second Circuit

---

August Term, 2013
No. 12-3403-cv (L), 12-3729 (Con)

---

IN RE: WORLD TRADE CENTER LOWER MANHATTAN
DISASTER SITE LITIGATION

---

DOROTA MARKUT, et al.,
*Plaintiffs*,

BYRON ACOSTA, et al.,
*Plaintiffs-Appellants*,

*v.*

VERIZON NEW YORK INCORPORATED,
*Defendant-Appellee*,

TULLY INDUSTRIES, INC., et al.,
*Defendants*,

WTC CAPTIVE INSURANCE COMPANY, INC.,
*Interested-Party*,

IN RE: WORLD TRADE CTR. LOWER MANHATTAN DISASTER SITE LITIG.

WORBY GRONER EDELMAN & NAPOLI BERN, LLP,
*Cross-Defendant*.

———————

Appeal from the United States District Court
for the Southern District of New York.
Alvin K. Hellerstein, *Judge*.

———————

ARGUED: OCTOBER 9, 2013
DECIDED: JULY 10, 2014
CORRECTED: JULY 10, 2014

———————

Before: LYNCH, CHIN, and DRONEY, *Circuit Judges*.

———————

Appeal from orders of the United States District Court for the Southern District of New York (Hellerstein, *J.*) dismissing claims of 211 plaintiffs for answering "none" to interrogatory asking them to identify "diagnosed" conditions, injuries, and diseases for which they were seeking recovery and claims of 31 plaintiffs for failure to prosecute.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**

———————

DENISE A. RUBIN (Paul J. Napoli and W. Steven Berman, *on the brief*), Napoli Bern Ripka Shkolnik LLP, New York, New York, *for Plaintiffs Dorota Markut, et al., and Plaintiffs-Appellants Byron Acosta, et al.*

LEE ANN STEVENSON, Kirkland & Ellis LLP, New York, New York, (Richard E. Leff, McGivney & Kluger, P.C., *on the brief*), New York, New York, *for Defendant-Appellee Verizon New York Incorporated*.

James E. Tyrell, Patton Boggs LLP, Newark, New Jersey, *for Defendants Tully Industries Inc., et al*.

Margaret H. Warner, McDermott Will & Emery LLP, Washington, DC, *for Interested-Third-Party WTC Captive Insurance Company, Inc*.

CHIN, *Circuit Judge*:

In the aftermath of the attacks on the World Trade Center ("WTC") on September 11, 2001, thousands of individuals participated in rescue, recovery, and clean-up operations at the World Trade Center site and surrounding areas. Many sustained injuries and brought lawsuits seeking compensation. These cases were consolidated before a single judge, the Honorable Alvin K. Hellerstein, in the United States District Court for the Southern District of New York. In this case, plaintiffs-appellants are cleaning workers who purportedly were exposed to toxic contaminants while working in buildings on the periphery of the World Trade Center site following the attacks. Plaintiffs were employed by cleaning

companies hired by defendants, owners of various buildings in lower Manhattan that were damaged or destroyed in the attacks.

Two orders of the district court are challenged on this appeal. First, the district court granted summary judgment dismissing the claims of 211 plaintiffs who answered "none" to an interrogatory asking plaintiffs to identify "diagnosed" conditions, injuries, and diseases for which they were seeking recovery. Second, the district court dismissed the claims of another 31 plaintiffs for failure to prosecute because they did not certify their interrogatory responses by a court ordered deadline. We vacate and remand with respect to the grant of summary judgment dismissing the claims of the 211 plaintiffs, and we affirm with respect to the dismissal of the claims of the 31 plaintiffs for failure to prosecute.

## STATEMENT OF THE CASE

### A.     The Statutory Background

In response to the terrorist attacks and their aftermath, Congress enacted the Air Transportation Safety and System Stabilization Act of 2001 ("ATSSA"), Pub. L. No. 107-42, 115 Stat. 230 (codified as amended at 49 U.S.C. § 40101 note). Among other things, ATSSA established the Victim's Compensation Fund (the "VCF") to provide relief to individuals who suffered physical harm or death as a result of the terrorist attacks. *See id.* §§ 401, 403. To be

eligible for the VCF, individuals were required to waive their right to pursue damages in court for injuries that they sustained as a result of the terrorist attacks. *See id.* § 405(c)(3)(B)(i). ATSSA, as amended, also provided for a federal cause of action for damages arising from the terrorist attacks and mandated that the United States District Court for the Southern District of New York have original and exclusive jurisdiction to hear such claims. *See id*. § 408(b)(3) (as amended).

The VCF was originally open to claims from December 21, 2001 through December 22, 2003. *See id.* § 405(a)(3); s*ee also* James Zadroga 9/11 Health and Compensation Act of 2010, Pub. L. No. 111-347, § 202(b)(3), 124 Stat. 3623 (2011) (the "Zadroga Act"); James Zadroga 9/11 Health and Compensation Act of 2010, 76 Fed. Reg. 54112, 54112 (Aug. 31, 2011) (codified at 28 C.F.R. § 104). Congress passed the Zadroga Act to amend ATSSA, reopen the VCF, and provide medical monitoring and treatment benefits to those workers who responded to and cleaned up after the terrorist attacks. The Zadroga Act and its implementing regulations provided, among other things, that to be eligible for the VCF, claimants had to withdraw any pending civil actions for damages related to WTC work by January 2, 2012. *See* 28 C.F.R. § 104.61(b) (2011).

**B.      The Proceedings Below**

**1.      The Pleadings and Initial Discovery**

Plaintiffs' claims are part of the mass tort litigation arising from the terrorist attacks.  These cases were consolidated before the district court for pre-trial purposes on November 1, 2002.[1]

In their First Amended Master Complaint (the "Master Complaint"), dated March 28, 2008, plaintiffs asserted claims for negligence, wrongful death, and violations of the New York Labor Law.  They alleged that defendants failed to "provide for [their] safety, protection and well-being" by failing to adequately monitor their working conditions and provide safety equipment to protect them from harmful airborne contaminants.  App. at 11276-80.  As a result, plaintiffs contended that they:

> sustained severe and permanent personal injur[ies] and/or disabilit[ies] and will be permanently caused to suffer pain, suffering, inconvenience and other effects of such injuries which included conscious pain and suffering and/or which may result in . . . wrongful death . . . including the fear of same . . . . In addition, [plaintiffs] incurred and in the future will necessarily incur further hospital and/or medical expenses in an

---

[1] The Court has summarized the background of these related cases in greater detail in *McNally v. Port Authority*, 414 F.3d 352, 357-63 (2d Cir. 2005), and *In re World Trade Center Disaster Site Litigation*, 521 F.3d 169, 172-75 (2d Cir. 2008).

> effort to be cured of said injuries; and . . . ha[ve]
> suffered and will necessarily suffer additional loss of
> time and earnings from employment.

Pl. Amend. Compl. at ¶ 142.

The district court required individual plaintiffs to complete and submit a "Pro-Forma First Amended Complaint by Adoption" (the "Check-off Complaint"). The Check-off Complaint included, among other things, each plaintiff's personal information, the hours and locations at which she worked, and the injuries she alleged as a result of her work. Some plaintiffs also completed "core discovery responses," which contained, among other things, a list of injuries and symptoms that they alleged resulted from WTC-related work, the contact information of the physicians or healthcare providers who treated or diagnosed them, a list of diagnoses (if any) that they received related to their injuries, and information as to whether a physician or healthcare provider connected their injuries to WTC-related work. Some plaintiffs also submitted medical records. The information generated from the core discovery responses and the medical records were stored in court-ordered databases.

On February 2, 2011 the district court stayed all proceedings, with the exception of "core discovery obligations," until July 25, 2011.

### 2.    The TCDI Database

On August 2, 2011, the district court held a conference to determine how to proceed in light of the expiration of the July 25 stay. The district court and the parties acknowledged that, throughout the litigation, medical information and discovery responses had been gathered and stored in the court-ordered databases. Nevertheless, the district court discussed the need for a neutral database (the "TCDI Database"),[2] comprised of responses to a set of interrogatories agreed to by the parties, to gather and house essential information about each plaintiff. The district court explained that the TCDI Database was necessary to determine how many of the approximately 1,500 plaintiffs were pursuing their cases or instead were opting out of the litigation to receive compensation through the VCF under the Zadroga Act. Further, plaintiffs were to certify their answers to the interrogatories, so as to provide reliable information about their claims. Finally, the district court explained and the parties agreed that the TCDI Database would serve as a tool to choose the cases that would proceed as a group for more intensive discovery. The further discovery would verify the reliability of

---

[2] The TCDI Database was created and maintained by Technology Concepts & Design Incorporated, a litigation support corporation.

information provided in the initial discovery process and prepare initial cases for trial.

The district court summarized the discovery and scheduling issues that were raised at the August 2 conference in an order dated August 29, 2011. The district court ordered counsel to create a set of questions with the court-appointed Special Masters that each plaintiff would answer and certify. Plaintiffs were "required to complete the questionnaires in a timely fashion" and "[a]ny [p]laintiff who fail[ed] to fill out his or her questionnaire in a time period that enable[d] . . . th[e] discovery program to proceed [would] be liable to be dismissed for failure to prosecute their case." App. at 1746-47. From the information generated by the interrogatories and stored in the TCDI Database, the Special Masters were to generate a list of cases from which counsel and the district court would choose an initial 45 cases to proceed with further discovery. The process was to be completed by October 11, 2011.

The TCDI Database was to be created through plaintiffs' responses to 33 interrogatories, organized under nine headings: (1) case profile data; (2) WTC work background data; (3) deceased plaintiffs; (4) tobacco use; (5) pre-existing disorders, diseases, and anatomical abnormalities; (6) diagnosed conditions/ injuries and diseases for which plaintiff seeks recovery in this litigation; (7) loss

of earnings; (8) disability claims; and (9) workers' compensation claims. Under the heading "Diagnosed Conditions/ Injuries and Diseases for which P[laintiff] seeks recovery in this litigation," one interrogatory asked "[f]or which diagnosed condition(s)/injury(s)/disease(s) does P[laintiff] seek recovery?" U.S.C.A. dkt. no. 12-3403, doc. no. 164 at 2.

### 3. Enlargements of Time and the December 8, 2011 Order

Shortly after the August 29, 2011 order, plaintiffs asked the district court to "relax" the requirement that their interrogatories be sworn. Citing 28 U.S.C. § 1746 and Federal Rule of Civil Procedure 33, the district court denied plaintiffs' request, but granted plaintiffs an extension until October 31, 2011 to provide their sworn answers. The district court granted plaintiffs a second extension on November 8, 2011. In an order dated November 17, 2011, the district court granted plaintiffs a third extension, to December 2, 2011, providing that "[n]o further enlargements will be granted." App. at 1753.

In an order dated December 8, 2011, the district court denied plaintiffs' motion to further enlarge the time for 170 plaintiffs to provide sworn or certified answers to the interrogatories. Accordingly, the district court dismissed these cases with prejudice for failure to prosecute. The order provided that plaintiffs who wished to move to open the judgment dismissing their cases had to

file motions by January 2, 2012 showing a ground provided by Federal Rule of Civil Procedure 60(b).

This Court affirmed the December 8 order on appeal. *Cortez v. City of New York*, 722 F.3d 483 (2d Cir. 2013) (per curiam).

### 4. Dismissal of Plaintiffs' Claims

In an order dated December 22, 2011, the district court directed defendants to file a motion to dismiss 281 plaintiffs' claims for which plaintiffs answered "none" to the diagnosis interrogatory. The December 22 order also listed the cases that the district court and counsel chose, based on the information in the TCDI Database, to proceed to intensive discovery and trial. The remaining cases were stayed pending the full discovery process for these selected cases.

On January 11, 2012, pursuant to Rule 56 and the December 22 order, defendants moved for summary judgment against 281 plaintiffs who answered "none" to the diagnosis interrogatory, arguing that under New York law plaintiffs could not, in light of their responses, maintain their causes of action. In addition, pursuant to Rules 37 and 41, defendants moved to dismiss 132 plaintiffs' claims for failure to properly certify their interrogatory responses by the December 2 deadline.

Plaintiffs opposed the motions. As an initial matter, plaintiffs clarified that of the 281 plaintiffs identified in defendants' motion for summary judgment, only 219 plaintiffs were pursuing their claims. Plaintiffs argued, among other things, that defendants' motion for summary judgment against the plaintiffs who answered "none" improperly relied on the TCDI Database, which was a means for gathering and sorting through basic information about plaintiffs' claims, rather than dispositive discovery. Plaintiffs submitted over 400 exhibits, consisting of plaintiffs' pleadings, core discovery responses, and affidavits alleging injuries and symptoms that they suffered because of WTC-related work, to demonstrate that genuine material issues of fact existed. Specifically, of the 219 plaintiffs, 203 submitted their Check-off Complaints, 97 submitted their core discovery responses, and 108 completed affidavits after defendants' motion for summary judgment was filed (the "late affidavits"). Some 117 plaintiffs also amended their responses to the diagnosis interrogatory on the TCDI Database to allege specific injuries, including fear of cancer and medical monitoring. To support their claims, plaintiffs submitted an affidavit from Shira Kramer, Ph.D., M.H.S., explaining that "WTC-exposed populations . . . have experienced increased risks of . . . 'WTC cough[,]' new or worsening

upper and lower respiratory symptoms, [and] asthma," among other things. Kramer Affidavit at ¶ 6.

In response, defendants submitted a schedule comparing the answers of 70 plaintiffs who submitted both amended diagnosis interrogatories and late affidavits, claiming that the injuries these plaintiffs alleged were inconsistent and accordingly implausible. Defendants also submitted medical records from two plaintiffs to show that the injuries that they alleged pre-dated the terrorist attacks. On July 23, 2012, the district court heard oral argument on defendants' motions.

In an order dated July 25, 2012, the district court granted defendants' motion to dismiss 31 plaintiffs' claims for failure to prosecute their cases for the reasons stated in the December 8 order. The July 25 order provided that if plaintiffs wished to move to open the judgment dismissing their cases, they could file motions by August 24, 2012 showing a ground provided by Rule 60(b).

The district court also granted defendants' motion for summary judgment against those plaintiffs who answered "none" to the diagnosis interrogatory. The district court explained that it would not consider plaintiffs' affidavits that disputed their prior sworn answers and accordingly created a material issue of fact after defendants' motion for summary judgment. Further, the district

court found that claims for medical monitoring and fear of cancer are not stand-alone causes of action under New York law. The district court ordered defendants to identify the specific plaintiffs affected by the July 25 order.

In an order dated August 9, 2012, the district court dismissed 211 plaintiffs' claims identified by defendants for the reasons set forth in the July 25 order.

Plaintiffs appeal the July 25 and August 9 orders.

## DISCUSSION

We address first the district court's grant of summary judgment against the 211 plaintiffs who answered "none" to the diagnosis interrogatory and second the district court's dismissal of the 31 claims for failure to prosecute.

**A.    Summary Judgment**

**1.    Applicable Law**

We review the grant of summary judgment *de novo*, construing the evidence in the light most favorable to the non-moving parties and drawing all reasonable inferences in their favor. *See Mullins v. City of New York*, 653 F.3d 104, 113 (2d Cir. 2011).

Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82 (2d Cir. 2004) (internal quotation marks omitted). If "there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." *Id*. at 83. In other words, for defendants "to succeed on summary judgment [they] must establish 'that [plaintiffs are] unable to prove at least one of the essential elements'" of their claims. *Rubens v. Mason*, 527 F.3d 252, 255 (2d Cir. 2008) (quoting *Crawford v. McBride*, 303 A.D.2d 442, 442 (2d Dep't 2003)).

To establish their claims, plaintiffs must show that they were injured by defendants' conduct. Specifically, to establish a *prima facie* case of negligence under New York law, a plaintiff must show "(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty, and (3) injury to the plaintiff as a result thereof.'" *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 428 (2d Cir. 2013) (quoting *Akins v. Glens Falls City Sch. Dist.*, 53 N.Y.2d 325, 333 (1981)). Codifying common law negligence, New York Labor Law § 200 provides for a general duty to protect the health and

safety of employees. *See*, *e.g.*, *Haider v. Davis*, 35 A.D.3d 363, 364 (2d Dep't 2006).

Under New York Labor Law § 241, which applies to construction, excavation, and demolition work, "contractors and owners and their agents" are required, among other things, to "provide reasonable and adequate protection and safety" to their employees, according to such rules as the commissioner of labor may prescribe. N.Y. Lab. L. § 241(6). A defendant is liable under § 241(6) if "the defendant violated a safety regulation that set forth a specific standard of conduct, and . . . the violation was the proximate cause of [plaintiff's] injuries." *Wilson v. City of New York*, 89 F.3d 32, 38 (2d Cir. 1996).

## 2. Application

In granting summary judgment based solely on plaintiffs' response of "none" to the interrogatory, the district court erred. While we appreciate that the sheer number of cases before the district court made its task of managing this mass tort litigation extraordinarily difficult, the district court was obliged to individually consider each plaintiff's answer of "none" in the context of any other evidence of injury.

The use of the word "diagnosed" in the interrogatory created some ambiguity. It was possible that a plaintiff manifested

symptoms of a condition, illness, or disease that had not yet been diagnosed when he answered the interrogatory. Indeed, claims arising from exposure to toxic or harmful substances often present nuanced and fact-specific questions as to whether and when a legally cognizable injury exists.

For example, under New York law, a cause of action accrues in the toxic tort context when a plaintiff discovers an injury or "when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff, whichever is earlier." N. Y. C. P. L. R. § 214-c (2). In *In re New York County DES Litigation*, 89 N.Y.2d 506, 514 (1997), the New York Court of Appeals considered whether a plaintiff's action for reproductive injuries resulting from her mother's exposure to diethylstilbestrol ("DES") was time-barred. Finding that it was, the Court held that "the time for bringing [an] action begins to run under [C.P.L.R. § 214-c (2)] when the injured party discovers the primary condition on which the claim is based" rather than "when the connection between [the] symptoms and the injured's exposure to a toxic substance is recognized." *Id.* at 509. Accordingly, when a legally cognizable injury accrues is not dependent on "the medical sophistication of the individual plaintiff [or] the diagnostic acuity of his or her chosen physician." *Id*. at 515. Instead, C.P.L.R. § 214-c requires only the "discovery of the

manifestations or symptoms of the latent disease that the harmful substance produced." *Id.* at 514; *see also Goffredo v. City of New York*, 33 A.D.3d 346, 347 (1st Dep't 2006) (finding petition to serve notice on city for personal injury as a result of exposure to harmful substance untimely based on when symptoms manifested themselves, rather than when illness was diagnosed).

New York courts have not established a bright-line rule for when symptoms or manifestations of a physical condition are sufficient to trigger CPLR § 214-c. *See DES Litigation*, 89 N.Y.2d at 514 n.4 (recognizing "there may be situations in which the claimant may experience early symptoms that are too isolated or inconsequential" but declining to decide "precisely where the threshold lies"); *cf. Sweeney v. Gen. Print.*, 210 A.D.2d 865, 865 (3d Dep't 1994) ("[T]he phrase 'discovery of the injury' necessarily contemplates something less than full awareness that one has been damaged as a result of exposure to a particular toxic substance."). Courts have instead tailored their inquiries as to when a legally cognizable injury exists in toxic tort cases to the particular facts before them, focusing on factors such as the extent of plaintiff's exposure to a toxic substance, her medical history, the onset of her symptoms, and the manifestations of a particular illness or disease. *See, e.g.*, *Rosner v. Mira, Inc.*, 16 A.D.3d 277, 278 (1st Dep't 2005)

(finding plaintiff's onset of extreme pain in left eye a "discoverable objective manifestation" of injury based on exposure to a toxic substance) (quoting *Krogmann v. Glen Falls City Sch. Dist.*, 231 A.D.2d 76, 78 (3d Dep't 1997); *Whitney v. Agway Inc.*, 238 A.D.2d 782, 784-85 (3d Dep't 1997) (concluding plaintiff's action accrued at some point between the onset of her symptoms and her probable diagnosis, because "she was immediately aware of the existence of symptoms that were practically identical to those classically caused by pesticide poisoning" and plaintiff's "physicians were, at the very least, exploring the poisoning theory as a probable source of her symptoms"). Contrary to defendants' suggestion, therefore, a plaintiff's answer of "none" to the interrogatory did not foreclose the possibility that she would be able to maintain her cause of action under New York Law.

The answer "none" did not necessarily preclude other evidence of injury. Rather, the district court was required to examine each plaintiff's submissions in the record to determine whether that plaintiff raised a genuine issue of material fact as to whether he or she had sustained a compensable injury. Some plaintiffs submitted evidence of injury that was not, at least arguably, inconsistent with a "none" answer to the interrogatory. In our view, roughly three categories of plaintiffs existed.

The first category includes those plaintiffs who answered "none" and submitted merely Check-off Complaints in response to defendants' motion. The grant of summary judgment against them was proper. Not only did these plaintiffs answer "none" to the interrogatory, they failed to submit *any* evidence of injury. Plaintiffs were required to go beyond their pleadings to show that genuine issues of fact existed. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).[3]

Summary judgment was improper without more analysis, however, as to the second category of plaintiffs -- those who offered core discovery responses before defendants moved for summary judgment. In these responses, several plaintiffs provided evidence of injuries of and/or symptoms resulting from air contaminants at the WTC site. For example, one plaintiff swore that he suffered from chronic cough, dyspnea, and an optic problem. His symptoms

---

[3] We reject plaintiffs' argument that the response to the diagnosis interrogatory could not be a basis for summary judgment because these initial interrogatories were only preliminary. The response was still a sworn statement. Moreover, plaintiffs had the opportunity to produce other discovery to prove injury, and many in fact did. Finally, to the extent that plaintiffs needed additional time for discovery, they failed to file an affidavit pursuant to Federal Rule of Civil Procedure 56(d). *See Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137 (2d Cir. 1994) ("[T]he failure to file an affidavit under [this Rule] is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.").

included, among other things, chest tightness, cough, eye irritation, fatigue, and shortness of breath. He visited a hospital several times for his injuries and alleged that a physician connected two of his injuries to his WTC work. This response, in conjunction with plaintiffs' expert report that identified the adverse effects of exposure to air contaminants at the WTC site, created an issue of material fact as to whether this plaintiff sustained injuries resulting from defendants' actions.

Another plaintiff represented in his core discovery response that he suffered from respiratory problems. His symptoms were dizziness, fatigue, and shortness of breath. The plaintiff indicated that he visited a physician for these respiratory problems, but he did not receive a diagnosis. His negative answer to the diagnosis interrogatory, therefore, was not inconsistent with his core discovery response and a material issue of fact existed as to whether he suffered a legally cognizable injury. Hence, summary judgment was premature as to these plaintiffs, as well as to other plaintiffs with similar discovery responses as there was "evidence in the record from which a reasonable inference could be drawn" that these plaintiffs were injured by defendants' conduct. *Sec. Ins. Co. of Hartford*, 391 F.3d at 82-83 (internal quotation marks omitted).

The third category of plaintiffs was comprised of individuals who did not submit core discovery responses, but instead offered late affidavits and/or amended interrogatory responses. Whether summary judgment was warranted as to their claims depends on the individual responses. The district court was correct, as a general matter, that plaintiffs may not create material issues of fact by submitting affidavits that dispute their own prior testimony. *See Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 572 (2d Cir. 1991). The principle does not apply, however, if the statements "are not actually contradictory," or "the later sworn assertion addresses an issue that . . . was not thoroughly or clearly[ ] explored . . . ." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 43 (2d Cir. 2000).

In light of the language of the diagnosis interrogatory, it is unclear that the late affidavits or amended interrogatory responses necessarily contradicted plaintiffs' answers to the diagnosis interrogatory. For example, one plaintiff, in her late affidavit, swore that she suffered from bronchitis at least two times a year, chronic coughing, and difficulty breathing. This submission was not necessarily inconsistent with her answer of "none" as to whether she sought recovery for a *diagnosed* condition, disease, or injury.

Moreover, some of the plaintiffs may have had reasonable explanations for amending their interrogatory responses. During oral argument on the summary judgment motion, defendants claimed that some plaintiffs amended their answers to the diagnosis interrogatory without explanation. Plaintiffs did, however, attempt to provide an explanation as they contended that they did not originally understand the diagnosis interrogatory to address any injuries other than *currently diagnosed* conditions. Consistent with that explanation, many of the amended interrogatories alleged symptoms or manifestations of illnesses that were not currently diagnosed. Accordingly, on remand, the district court should consider whether plaintiffs' individual submissions necessarily contradicted their interrogatory responses in light of their alleged injuries, pleadings, previous discovery submissions, and the language of the diagnosis interrogatory.

Of course, to the extent that plaintiffs alleged independent causes of action for medical monitoring or fear of cancer, the district court was correct to dismiss these claims. Medical monitoring is not an independent cause of action under New York law. *See Caronia v. Philip Morris USA, Inc.*, 22 N.Y.3d 439, 452 (2013). Similarly, to establish entitlement to damages for fear of cancer, a plaintiff must show a "'rational basis' for [the] fear[,] . . . i.e., . . . a 'clinically

demonstrable presence of toxins in the plaintiff's body, or some indication of toxin-induced disease, i.e., some physical manifestation of toxin contamination.'" *Id.* at 448-49 (quoting *Abusio v. Consol. Edison Co. of N.Y.*, 238 A.D.2d 454, 454-55 (2d Dep't. 1997) (brackets in original omitted). In other words, a fear of cancer without some physical manifestation of contamination is not an independent basis for a cause of action. We note, however, that a plaintiff may obtain the remedy of medical monitoring "as consequential damages, so long as the remedy is premised on the plaintiff establishing entitlement to damages on an already existing tort cause of action." *Id.* at 452.

In sum, the fact that plaintiffs answered "none" to the interrogatory was an insufficient basis, by itself, for a blanket conclusion that all 211 plaintiffs could not establish their claims against defendants as a matter of law. Instead, the district court, with the help of the Special Masters, must assess plaintiffs' submissions individually before deciding whether summary judgment is appropriate. We note, of course, that after making this individual assessment, if the district court finds that no genuine issues of material fact exist as to whether a plaintiff sustained a legally cognizable injury under New York law, summary judgment would be proper.

**B.** **Failure to Prosecute**

We turn to the district court's order dismissing the claims of the 31 plaintiffs for failure to prosecute. As plaintiffs conceded at oral argument on appeal, their claim of error is largely foreclosed by our decision in *Cortez*. Plaintiffs contend, however, that the district court erred in refusing to deem their claims dismissed *nunc pro tunc* to December 8, 2011, in accordance with the December 8 order. Plaintiffs argue that they were unable to apply for the VCF because their dismissals were not effective by January 2, 2012, the deadline for withdrawing civil actions. *See* 28 C.F.R. § 104.61(b) (2011).

We review the "grant or denial of equitable relief for abuse of discretion." *United States v. Zaleski*, 686 F.3d 90, 92 (2d Cir.), *cert. denied* 133 S. Ct. 554 (2012). "*Nunc pro tunc*, Latin for 'now for then,' refers to a court's inherent power to enter an order having retroactive effect." *Iouri v. Aschroft*, 487 F.3d 76, 87 (2d Cir. 2006). A district court's exercise of this power is "a far-reaching equitable remedy applied in certain exceptional cases, typically aimed at rectifying any injustice to the parties suffered by them on account of judicial delay." *Id.* (internal quotation marks, citations, and alterations omitted).

We conclude that the district court did not abuse its discretion. These plaintiffs had notice that they had to certify their

interrogatories by the December 2 deadline to pursue their claims in court, or discontinue their civil actions prior to the deadline set by the Zadroga Act and its regulations to remain eligible for the VCF. Indeed, there is nothing in the record to suggest that these 31 plaintiffs did not have the same information and choices as the plaintiffs affected by the December 8 order, those plaintiffs who chose to withdraw their civil actions to enroll in the VCF, or those plaintiffs who pursued their claims by complying with the district court's orders.

This is not an "exceptional case[ ]" that warrants a "far-reaching equitable remedy," and the district court did not abuse its discretion in refusing to dismiss these claims *nunc pro tunc. Id.* Accordingly, we affirm the district court's dismissal of the claims of the 31 plaintiffs for failure to prosecute.

## CONCLUSION

We conclude that the district court erred in granting summary judgment against plaintiffs based solely on their answer "none" to the diagnosis interrogatory and without considering the record as a whole. The district court did not, however, abuse its discretion in dismissing the claims of the 31 plaintiffs for failure to prosecute. Accordingly, the July 25 order is **AFFIRMED IN PART** and

**VACATED IN PART**.  The August 9 order is **VACATED**.  The case

is **REMANDED** for further proceedings.